**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **S.R. a minor child by and through his guardian** | ) | |
| **KELLEY MUSGROVE and as Wrongful Death** | ) | |
| **Beneficiaries and as survivors of** | ) | |
| **MIRANDA MUSGROVE and** | ) | |
| **A.A. a minor child by and through her guardian** | ) | |
| **JUDY EVANS and as Wrongful Death** | ) | |
| **Beneficiaries and as survivors of** | ) | |
| **MIRANDA MUSGROVE** | ) | |
|         **Plaintiffs**, | ) | |
| | ) | |
| **v.** | ) | **3:19-cv-737-KHJ-FKB** |
| | ) | |
| **SCOTT COUNTY MISSISSIPPI;** | ) | |
| **ZAC HOLLAND;** | ) | |
| **CODY MAY; and** | ) | |
| **JOHN DOES 1-5.** | ) | |
|         **Defendants**. | ) | **JURY TRIAL DEMANDED** |

**CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

COME NOW, the Plaintiffs, by and through undersigned counsel, and submits this their Consolidated Response in Opposition to Defendants' Motion for Summary Judgment and would show unto this Honorable Court the following facts, to-wit:

## I.     <u>INTRODUCTION</u>

Today, S.R. and A.A. are orphans because the Defendants ignored Ms. Musgrove's plea not to let her die. Scott County's entire motion is based upon a false premise because the County ignores a vital fact, never so much as mentioning the fact that Ms. Musgrove told the deputies multiple times that she had been <u>drugged against her will</u>, that <u>she did not feel well</u>, and she asked the <u>deputies not to let her die</u>. Just as the deputies did at the scene that fateful day, the County ignores Ms. Musgrove's report that she had been drugged, and as a result Ms. Musgrove

1

is now dead and her children are orphans. Neither the Court, the officers, nor the jury will be able to bring Ms. Musgrove back to life, but justice can still prevail. The Defendants' motion must be denied.

## II.     EXCESS PAGES SHOULD BE STRICKEN

The County's initial briefing contains 55 pages. In accordance with the local rules and the federal rules of civil procedure, the County has already exceeded the page limit for both its motion, memorandum and rebuttal brief by almost 20 pages. The County failed to request leave before filing excess pages. The Court should strike the excess pages and disallow the filing of any additional pages and any other excess would only be in excess of the limits under the rules.

## III.     LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). At the summary judgment stage, the court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 150 (2000).

## IV.     ARGUMENT AND ANALYSIS

### A.  Summary of the Argument

Ms. Musgrove is dead, and her children are orphans because the Defendants knew that Ms. Musgrove had been poisoned and needed a hospital, yet the Defendants chose to wait three hours before taking Ms. Musgrove to the hospital, even though the paramedics wanted Ms. Musgrove to go the hospital almost two (2) hours sooner. Just like the officers did on July 10,

2018 the County's brief totally ignores Ms. Musgrove's report to the officers that she had been (1) drugged, (2) did not feel well, (3) needed help, and (4) plead not to let her die. Thank God for body camera footage because not a single officer even mentions these important facts in their reports. The officers knew that Ms. Musgrove needed medical attention and did in fact call the ambulance, but despite the paramedics and officers acknowledging the need for a hospital the officers took Ms. Musgrove to jail where she was essentially dead-on-arrival.

Yes, Ms. Musgrove was being "difficult," but even the officers acknowledge that she was incoherent and not able to make good choices because of being drugged. The officers had full authority under the law to take Ms. Musgrove to the hospital. Ms. Musgrove should not be dead because she was difficult and incoherent after being drugged by a third party. Of course, Ms. Musgrove's death was preceded by the officers threatening to taze her in the face, threatening to have her daughter taken away from her, and other acts of harassment and threats towards Ms. Musgrove, a person who should be considered a person in crisis.

## B. Summary of Disputed Facts

The Court is well aware that at the summary judgment, factual disputes must be decided in favor of the non-movant, Ms. Musgrove. There are several material facts which require the denial of summary judgment. As evidenced by the County's total disregard of Ms. Musgrove's report that she had been drugged by someone, there apparently exist a genuine issue of material fact regarding whether or not the officers were aware or should have been aware of substantial risk of harm to Ms. Musgrove. The officers gloss over the repeated pleas for help by saying they simply did not believe Ms. Musgrove. There was no evidence from any person to contradict what Ms. Musgrove reported to the officers about being drugged, The facts presented herein show that Ms. Musgrove told the officers she had ben drugged and the paramedics stated that Ms.

3

Musgrove needed to go to the hospital.

Based upon the Defendants' motion, there is also an apparent dispute regarding whether or not the officers recklessly disregarded the risk of harm. The facts presented herein show that the officers were aware that Ms. Musgrove needed to go to the hospital, yet the officers threated to inflict harm upon Ms. Musgrove and even threatened to taze her in the face, at one point dry firing a tazer at Ms. Musgrove. Even a lay person knows that someone who has been poisoned needs a hospital, but in this case the paramedics recommended taking Ms. Musgrove to the hospital and the offices chose jail instead.

Regarding "subjective knowledge," the officers knew from their own viewpoint as well as that of the paramedics that Ms. Musgrove needed a hospital. The officers even told Ms. Musgrove that her choices were jai lor hospital. No one knew what substance Ms. Musgrove had been given by the third party, which is why the paramedics stated that Ms. Musgrove needed a hospital. The officers and the paramedics both acknowledged Ms. Musgrove's need for a hospital during the encounter. Because a reasonable jury could find that the officers were aware of a serious risk of harm to Ms. Musgrove and that the officers were deliberately indifferent to that risk of harm, the Defendants' Motion for Summary Judgment must be denied.

## C. <u>Plaintiff's Factual Allegations</u>

The County, just like the officers did that day, totally ignore important facts in their brief. The officers gloss over the important facts. Perhaps the most important fact the County ignores is the fact Ms. Musgrove sought out help because she had been drugged and was not feeling well. The County officers ignored those same facts and failed to note several other pertinent facts in their reports. The officers, despite any evidence to the contrary simply did not "believe" Ms. Musgrove. Thankfully, we have body camera footage which the County has already filed in the

record. Without the body cameras, we would never know that Ms. Musgrove told the officers multiple times that she had been drugged by a third party. Without the body cameras we would never know that the paramedics said that Ms. Musgrove needed to go to the hospital – because the Defendants conveniently left those important details out of their written reports.

According to the reports, the Defendants received a call for service on August 1, 2018 at around 7:23 p.m. At around 7:38 p.m. officer Holland is on scene and has makes contact with Ms. Musgrove. **Exhibit A, CAD Report. See also Exhibit B, Timeline.**

Thanks to the body camera footage, we know that Ms. Musgrove reported to the officers several key facts. The most important of these facts – Ms. Musgrove reported to the officers that she had been given something in her drink and that as a result she did not feel well. Despite these uncontradicted self-reports directly to the officers, Ms. Musgrove was placed in custody and not taken to the jail for almost two hours. Of course, the body camera video speaks for itself, but some of the highlights are pointed out below:

     **i.**      **Holland Body Camera [93-4]**

00:58 – Ms. Musgrove asks Deputy Holland for help

01:04 – Ms. Musgrove asserts that "he gave me something"

03:57 – Ms. Musgrove asserts "He did this to me"

05:32 – Ms. Musgrove again says "I need help"

06:10 – Ms. Musgrove says that she got something to drink and then started feeling "this way"

07:40 – Ms. Musgrove says that "Charlie" set her up – affirms that she has not smoked anything

08:32 – Ms. Musgrove says that she does not feel good

10:25 - Ms. Musgrove tells the officer that someone gave her a drink and she started feeling bad

13:02 – Deputy Holland notes that Ms. Musgrove is sweating, foaming at the mouth, and jerking

13:24 – Ms. Musgrove tells the deputy that she does not feel good

13:42 – Deputy Holland and Ms. Musgrove discuss the possibility that someone put meth in her drink

15:55 – Ms. Musgrove asks Deputy Holland for help

17:55 – Ms. Musgrove asks Deputy Holland to help her, to save her – save her baby girl
18:10 – Ms. Musgrove again asks for help

19:15 –Ms. Musgrove is erratic and foaming at the mouth

21:25 – Deputy Coty May arrives on scene

22:05 – Ms. Musgrove reports that he [Charlie] gave her a drink and that she does not feel good

25:25 – Paramedics arrive

25:30 – Deputy May winks at the paramedics with a smile on his face while Ms. Musgrove tries to explain her situation

26:10 – Paramedics note that Ms. Musgrove is hyperventilating

26:35 – Ms. Musgrove tells everyone present that she does not feel good

26:45 – Ms. Musgrove tells everyone present that there was something in her drink

28:15 – Ms. Musgrove tells everyone that he [Charlie] did this to her

28:27 – Everyone agrees that a substance is causing Ms. Musgrove's erratic behavior and foaming at the mouth

28:45 – Ms. Musgrove says she was setup

29:20 – Ms. Musgrove say she can not drive and does not feel good

29:25 – Deputy Holland says "1015" which means that Ms. Musgrove is being taken into custody

29:45 – Deputy May says that Ms. Musgrove can go to jail or the hospital

30:15 – Deputy May threatens to seriously hurt Ms. Musgrove is she does not quit snatching

30:35 – Deputy May places handcuffs on Ms. Musgrove after Ms. Musgrove accuses Deputy May of screwing her over

30:50 – Deputies begin threating to tale Ms. Musgrove's daughter away

31:05 – Deputy May gets in Ms. Musgrove's face

36:35 – Paramedics acknowledge that Ms. Musgrove needs a hospital and bloodwork to determine what's wrong

36:45 – Deputy Holland threatens to taze Ms. Musgrove in the face

37:00 – Deputy May threatens to have DHS take Ms. Musgrove's child away

==44:10 – Ms. Musgrove discusses him [Charlie] putting something in her drink==

46-50 – Witness on scene admits to not knowing what happened to Ms. Musgrove or why she is acting the way she is acting.

47:20 – Deputy Holland admits that meth doesn't usually affect someone like Ms. Musgrove that way

### ii.    Holland Body Camera on Scene [93-7]

2:10 – Paramedic says Musgrove is hyperventilating

2:39 -  Ms. Musgrove says she done not feel good

6:20 -  Officer May says that Ms. Musgrove's "snatching" is going to get her seriously hurt

7:00 – Musgrove asks to ride with the officer to take her daughter home

12:45 - Deputy Holland threatens to taze Ms. Musgrove in the face

20:10 – Ms. Musgrove screams about him [Charlie] putting something in her drink

20:15 – Deputy May fires his tazer multiple times at Ms. Musgrove (no contact made)

==22:10 – Ms. Musgrove says I'm about to fall out, **"Please don't let me die" Please don't let me die like her dad did….**==

Instead of going straight to jail, the deputies traveled to a dimly lit parking lot where they waited approximately 45 minutes to meet Ms. Musgrove's family to pick up Ms. Musgrove's daughter. While in the parking lot, Ms. Musgrove was initially violent and thrashing but then becomes quiet and there is some dispute as to whether she is passed out or sitting up on the back

seat. **Exhibit C, Holland p. 25-26.** Regardless, no one is able to speak with Ms. Musgrove at the parking lot meeting.

From the parking lot the deputies take Ms. Musgrove to the Scott County jail at around 9:54 p.m. At this point, more than two have hours have passed since Ms. Musgrove first told the officers she had been drugged by a third party. At around 10:19 p.m. Ms. Musgrove is removed from the car and is non-responsive, passed out on the ground and barely breathing. A jury can review the video and see the total lack of urgency from everyone involved at the jail. Deputy Holland says she might need medical treatment, but he makes no attempt to contact an ambulance himself. In fact, while he is taking his handcuffs off of Ms. Musgrove, deputy Holland complains that Ms. Musgrove got blood on his handcuffs.

While Ms. Musgrove is dying and her children becoming orphans, Deputy Holland is more concerned about trace amounts of blood on his handcuffs. Deputy Holland also points out that Ms. Musgrove has turned blue, again with no sense of urgency.

An ambulance arrives at the jail at or around 10:25 p.m. According to the paramedics, Ms. Musgrove suffered a cardio-respiratory arrest while they are loading her into the ambulance. This fact is important because this is the "point of no return" according to Dr. Saltzberg. **Exhibit D, Salrtzberg p. 12.** Ms. Musgrove is finally transported to Lackey Memorial Hospital. **Exhibit E, Carthage Records.** Ms. Musgrove arrives at Lackey around 10:43 p.m. According to hospital records, Ms. Musgrove is pronounced dead at 12:11 a.m. on August 2, 2018. **Exhibit F, Lackey Records.**

### iii.     County Sheriff Mike Lee's Deposition

Scott County Sheriff Mike Lee admitted during his deposition that Ms. Musgrove reported to the deputies that she had been drugged against her will. **Exhibit G, Lee p. 16.** Sheriff Lee also confirmed that for the first 45 minutes of their encounter with Ms. Musgrove, the only information available to the officers was Ms. Musgrove's report that she had been drugged against her will. **Exhibit G, Lee p. 17.** According to Sheriff Lee:

> A.    Ms. Musgrove was the one that reported it to the deputies first, that she was -- that something must have been put in her drink, that she was having problems and felt like someone had put something in her drink.  And I believe that that's where the deputy started -- that's where it was first heard.

**Exhibit G, Lee p. 18.**

Sheriff Lee also admits in his deposition that the paramedics on scene needed Ms. Musgrove to get bloodwork in order to help figure out what was wrong with her. **Exhibit G, Lee p. 22.** Sheriff Lee admits that there is no way for blood to be taken at the jail. **Exhibit G, Lee p. 22.** In fact, Sheriff Lee admits that the jail has NO WAY to treat Ms. Musgrove, but the deputies did recognize that Ms. Musgrove was in need of medical attention. **Exhibit G, Lee p. 25.** According to Sheriff Lee, the deputies are expected to rely on their "gut" feeling in choosing between jail or the hospital. **Exhibit G, Lee p. 21.**

Sheriff Lee admits in his deposition that as time progresses, Ms. Musgrove becomes more erratic in her encounter with his deputies. **Exhibit G, Lee p. 30.** Sheriff Lee also acknowledges that Ms. Musgrove goes from "active" to passed out, but his officers are not

9

trained to recognize these symptoms as signs of an overdose. **Exhibit G, Lee p. 30-31.**

Sheriff Lee also concedes that being threatened with physical harm, like his deputies threatening to use a taser on Ms. Musgrove, would cause additional stress. **Exhibit G, Lee p. 33.** Sheriff Lee also admits that threating to take Ms. Musgrove's daughter would also cause additional stress. **Exhibit G, Lee p. 34.**

> iv.    **Scott County Training**

Scott County officers receive no training on recognizing the difference between an opioid overdose and a meth overdose. **Exhibit G, Lee p. 11.** Scott County deputies also have no training to recognize possible overdoses or how to handle them, except for calling a paramedic. **Exhibit G, Lee p. 16.**

According to Scott County Sheriff Mike Lee, his officers have the authority to take a person in custody directly to the hospital, but that was not done with Ms. Musgrove. **Exhibit G, Lee p. 14-15.** Despite being allowed, transporting inmates to the hospital is not a practice of the deputies in Scott County. **Exhibit G, Lee p. 15.** Scott County will transport other deputies by patrol car to the hospital if a deputy needs a hospital, but others (non-county personnel) must wait on an ambulance. **Exhibit G, Lee p. 25.**

> v.    **Defendants' expert Michael Street**

The Defendant designated Mike Street as their police procedure expert in this case. Mr. Street agrees that a person does not have to be a trained police officer to know that when a poison or drug is ingested, time is of the essence. **Exhibit H, Street p. 12.** Even a lay person knows to get medical help when a substance is ingested, and you don't know what the substance is or what the effects may be from the substance. **Exhibit H, Street p. 12.** In fact, every person in America is aware of the poison control labels telling people to seek help immediately. **Exhibit H, Street p.**

**35.**

Mr. Street testified that "taking her to the jail where she gets a further screening or the possibility of getting mental help, or whatever, further that she might need would be the right decision." **Exhibit H, Street p. 24.** Ms. Street agrees that Ms. Musgrove needs more help and should be taken to a place where help can be provided, but the problem is the Scott County jail is incapable of providing the help that Ms. Musgrove needed. **Exhibit G, Lee p. 25.** Mr. Street does admit that he did not know what the medical capabilities of the Scott County jail were on the night of Ms. Musgrove's death, but he does finally concede that the hospital would have been able to treat Ms. Musgrove. **Exhibit H, Street p. 25.** Mr. Street admits that it would be safer to get Ms. Musgrove to the hospital rather than jail. **Exhibit H, Street p. 26.**

Going back to the deputies' lack of training, Mr. Street also admitted that the deputies did not know what the exact problem was involving Ms. Musgrove, they just knew that something was wrong. **Exhibit H, Street p. 27.** The deputies did not know what was causing Ms. Musgrove's symptoms and all the deputies knew was that someone had put something in Ms. Musgrove's drink. **Exhibit H, Street p. 28.** Mr. Street also agrees that the only way for Ms. Musgrove to actually get help would be at the hospital. **Exhibit H, Street p. 35.**

Importantly, Mr. Street testified that paramedics do not offer to take someone to the hospital who does not need to go to the hospital and the paramedics on scene in this case opined that Ms. Musgrove needed to go to the hospital. **Exhibit H, Street p. 36-37; 41-42.**

Mr. Street also agrees that as a "detainee," the deputies in this case owed Ms. Musgrove additional duties and responsibilities as the deputies are responsible for the health and well-being once Ms. Musgrove is in their custody. **Exhibit H, Street p. 43.** Not to beat a dead horse but:

> **Q.** I understand that but the question was -- and I hate to beat a dead horse, but since you mentioned it, the EMS, the medical help they called, suggested she go to the hospital, right?
>
> **A.** Yeah.

**Exhibit H, Street p. 44.**

Despite the EMS professionals saying that Ms. Musgrove needed a hospital, the deputies involved here took Ms. Musgrove on an hour long road trip and eventually to jail, even though they actually passed the hospital on their way to the jail.

### vi. "More likely than not," Ms. Musgrove would still be alive today had the deputies gone to the hospital sooner, before going to the jail

Although the times are different, the Plaintiff's expert and the Defendants' expert both agree that getting Ms. Musgrove real medical help sooner would have likely changed the outcome for Ms. Musgrove. According to Dr. Saltzberg, had the deputies gone from the parking lot meeting directly to the hospital, Ms. Musgrove would have likely survived being drugged. According to Dr. Saltzberg Ms. Musgrove experiences cardio collapse at or after 10:25 p.m. which is the "point of no return" for trying to save Ms. Musgrove. **Exhibit D, Saltzberg p. 13.**

According to the CAD report, the deputies left the parking lot at or around 9:54 p.m. and could have been at the hospital by 10:04 p.m. Of course, it must also be remembered that the deputies waited in that parking for almost an hour while Ms. Musgrove was dying on the back

seat from what turned out to be a drug overdose. If the deputies had gone to the hospital instead of the parking lot, the likelihood of Ms. Musgrove's survival would have been even higher according to Dr. Saltzberg. **Exhibit D, Saltzberg p. 32.**

## D.  <u>ARGUMENT</u>

Without a doubt officers around this state and around the country make tough decisions on a daily basis. Sometimes those decisions are made in a split second and sometimes, like here, those decisions are made with hours of time to collect information and make a decision. In this case, the officers had ample time to learn that Ms. Musgrove had been drugged and needed a hospital.

In this case, the deputies took a couple of hours, were told that Ms. Musgrove had been drugged and was not feeling well and the deputies decided to arrest Ms. Musgrove and take Ms. Musgrove to jail. This decision was made even though paramedics made it clear that Ms. Musgrove needed a hospital:

> **Q.** I understand that but the question was -- and I hate to beat a dead horse, but since you mentioned it, the EMS, the medical help they called, suggested she go to the hospital, right?
>
> **A.** Yeah.

**Exhibit H, Street p. 44.**

Deputy Holland agrees that Ms. Musgrove was incapable of making well, thought-out decisions. **Exhibit C, Holland p. 13.** Deputy Holland also agrees that Ms. Musgrove deteriorated more and more as the encounter continued. **Exhibit C, Holland p. 11.** Despite these facts, the

deputies took Ms. Musgrove to jail where she would not be able to get any medical help. **Exhibit G, Lee p. 25.**

Throughout the video it is obvious that Ms. Musgrove is concerned about the safety and wellbeing of her minor daughter. The officers made numerous threats about taking A.A. away from Ms. Musgrove, only making matters worse with Ms. Musgrove.

### i.    Inadequate/Denial of Medical Care

In this case, Ms. Musgrove reported to the officers that she had been drugged by another individual and needed help. No person at the scene contradicted Ms. Musgrove's statements. Ms. Musgrove reported to the officers, on scene, that she felt like she was about to "fall out" and she even asked Deputy May "Please don't let me die." [May video at 22:10]. Paramedics arrived on scene and opined that Ms. Musgrove needed to go to the hospital for medical attention they could not provide. **Exhibit H, Street p. 44.** Despite these facts, Ms. Musgrove was arrested and taken to jail during an encounter that last over 3 hours. During the encounter Ms. Musgrove was threatened with physical harm, threatened with a taser by Deputy Holland and Deputy May even dry fired his tazer at Ms. Musgrove, all while she was asking Deputy May not to let her die.

To succeed a claim for denial of adequate medical care, a claimant must show a sufficiently culpable state of mind on the part of the official sued, "deliberate indifference."1 *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Moreover, the plaintiff must demonstrate "deliberate indifference to [the prisoner's] serious medical needs, constituting the unnecessary and wanton infliction of pain…." *Id.* To succeed on a deliberate-indifference claim, plaintiffs must show that (1) the official was "aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists," and (2) the official actually drew that inference. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001) (*quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Such a showing requires evidence that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (*quoting Estelle*, 429 U.S. at 107, 97 S.Ct. 285). Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk. *Farmer v. Brennan*, 511 U.S. 825, 842 & n. 8 (1994). "[I]t remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety." *Id*. at 844.

In *Bias v. Woods*, 288 Fed.Appx. 158 (5th Cir. 2008) the 5th Circuit denied a physician's request for qualified immunity where the physician ordered that an inmate be transported to another facility about 150 miles away even though the inmate's need was "open and obvious." *Woods* at *163. In this case, Ms. Musgrove reported to the deputies that she had been drugged and that she was not feeling well. The paramedics opined that Ms. Musgrove needed to go to the hospital but she did not want to go in the ambulance because the deputies would not let her minor daughter go with her. Ms. Musgrove was in the deputies' custody, and those deputies had full authority to take Ms. Musgrove to the hospital.  The deputies knew that Ms. Musgrove's health was deteriorating, and nobody had any idea what drug had been put in Ms. Musgrove's drink. The deputies knew that Ms. Musgrove needed a hospital because they were told as much by the paramedics, but the deputies wasted 45 minutes waiting in the parking lot after the leaving the scene and then the officers wasted another 22 minutes taking Ms. Musgrove to the jail

instead of the hospital. As in *Wood*, the deputies were "was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed;" the deputies drew that inference because they even said that Ms. Musgrove could choose jail or the hospital; and the deputies "intentional failure to act caused a prolonged delay in medical care and resulted in substantial injury to [Musgrove];" See *Wood* at *163.

The cases cited by the Defendant are distinguishable from the present matter. For instance, in *Weaver* and *Watkins* both Plaintiffs had denied any drug use or even swallowing any drugs. *See, Weaver v. Shadoan*, 340 F.3d 398, 411 (6th Cir.2003); *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir.2001). Ms. Musgrove told both officers on scene THAT SHE HAD BEEN DRUGGED by a third party and that she was not feeling well. Ms. Musgrove denied voluntary drug use, but she at all times complained about being drugged by a man named Charlie. This fact quickly dispatches the County's argument based on *Weave* and *Watkins*.

Defendant's reliance on *Grayson* is misplaced for essentially the same reasons as *Watkins* and *Weaver*. See *Grayson v. Peed*, 195 F.3d 692, 696 (4th Cir. 1999). At no time had the Plaintiff in *Grayson* claimed to have been drugged and in need of help. Rather, the Plaintiff had been acting erratically, but there was no evidence of not feeling well or being drugged. Further, no medical person in *Grayson* said that Grayson needed to go to the hospital.

In this case, the officers knew that Ms. Musgrove had been given some unknown substance by a third party, Ms. Musgrove was not feeling well and asked for help even asking the officers not to let her die, and the paramedics confirmed that Ms. Musgrove needed a hospital. Despite this information the officers threatened to taze Ms. Musgrove in the face and then waited over an hour before even taking Ms. Musgrove to the jail.

The officers point to *Estate of Allison* in their brief requesting immunity for their actions.

*Estate of Allision* is also distinguishable from the present matter because there was no actual evidence that Allison was anything other than drunk. *Estate of Allison v. Wansley*, 524 Fed Appx. 963 (5th Cir. 2013). Allison did say that she had taken extra medication, but there was no indication that Allision asked for help or that she veer told the officers she did not feel well. There was no evidence that Allision had ingested narcotics, a stark difference between Allison and Ms. Musgrove. Also, in *Estate of Allison* the husband did not seem concerned and actually left the jail while his wife was passed out despite request from the officers to wait.

In addition, according to Deputy Holland's report, when everyone was at the parking lot to meet the grandmother, Ms. Musgrove was "laying across the backseat mumbling." **Exhibit I, Holland Report.** Ms. Evans (Musgrove's grandmother) could also see that Ms. Musgrove was laying across the backseat when they met the officers. **Exhibit J, Evans p. 50.** According to Ms. Evans, Ms. Musgrove's four-year-old daughter told her "they had handcuffs on my mama and then she just fell back dead." **Exhibit J, Evans p. 50.** According to Kelley Musgrove (mother) it appeared that Ms. Musgrove was asleep on the back seat of Deputy Holland's car. **Exhibit K, Musgrove p. 50.** Sleeping was a marked change from Ms. Musgrove's prior state and should have alerted the officers to an increased need for a hospital.

The facts of this case are similar to the facts alleged in *Brannan v. City of Mesquite, Texas*, 2020 WL 7344125, (N.D. Tex. Dec. 14, 2020). In *Brannan* the heirs of the deceased alleged that the officers were aware that the deceased had swallowed some sort of narcotic and the deceased was seen by paramedics upon arrival at the jail. *Id* at *3. The deceased in *Brannan* was left in the officer's care. The Court in *Brannan* denied the officer's motion to dismiss finding that at least one official was aware that the decedent faced a substantial risk of serious harm, because it was understood she had ingested narcotics, and deteriorated during the

encounter. *Id* at *4.

In *Brown v. Strain* the 5th Circuit denied qualified immunity for officers who had learned from a recording that an arrestee had swallowed "something" in the back seat of the patrol car. 663 F.3d 245, 247 (5th Cir. 2011). There were disputes about what happened in a ride to the jail the patrol car, but the Plaintiffs asserted that the officers were aware that the Plaintiff was pale, stuttering, and shaking in the patrol car. *Id*. Brown arrived at the jail in terrible condition, unable to stand and shaking. *Id* at 248. Like *Brown*, there is evidence here that the officers knew Ms. Musgrove had ingested "something," needed medical attention, and the officers were also aware that paramedics wanted Ms. Musgrove to go to the hospital. As in *Brown*, the facts of this case "taken as true, could legally support an inference of deliberate indifference by [Defendants] during the drive to the jail.] *Id* at 250.

**Objective Reasonableness**

The Defendants argue that their actions were objectively reasonable and that they are therefore entitled to immunity. It is undisputed that the Scott County jail did not have the ability to treat Ms. Musgrove. It is also undisputed that the paramedics wanted Ms. Musgrove to go the hospital. **Exhibit H, Street p. 44.** Despite these facts, Ms. Musgrove was placed under arrest by the officers and taken to the jail where hours of precious time were wasted.

The Defendants claim that it is objectively reasonable to ignore common sense and what the paramedics believe is best and take Ms. Musgrove to jail instead of a hospital. Because of being drugged, Ms. Musgrove was not in a state of mind to take care of herself – that's why she called for help in the first place.

Ms. Musgrove was not a seemingly intoxicated individual as in *Estate of Allison*. Ms. Musgrove requested help because she had been drugged by a third party and Ms. Musgrove did

not feel well. Ms. Musgrove even asked the officers not to let her die.

"The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir.2001). "The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated" the plaintiff's asserted constitutional or federal statutory right. *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir.2001).

If the jury credits Plaintiffs' version of the facts, no reasonable officer in the officers' circumstances would have believed his conduct to be lawful. *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir.2001). The officers arrested a person in crisis, Ms. Musgrove and delayed medical care. It is important to remember that the paramedics could not treat or help Ms. Musgrove, only a hospital could. Every lay person in America is aware of the poison control labels telling people to seek help immediately when unknown substances are ingested. **Exhibit H, Street p. 12 and 35.** Knowing that Ms. Musgrove could not receive help at the jail and knowing that Ms. Musgrove needed a hospital, it simply was not reasonable for the officers to wait two hours and then transport Ms. Musgrove to the jail where she dies. At the very least, a jury should decide if the officer's actions were objectively reasonable.

### Ms. Musgrove's death could have been averted with timely hospital care

The Defendants make the argument that Ms. Musgrove was going to die no matter what the deputies did in this situation. At the very least this is a "battle of the experts." As discussed more at length in *Daubert* briefing, Dr. Eugene Saltzberg has opined and testified under oath that Ms. Musgrove would have been saved had the deputies taken Ms. Musgrove from the parking lot

to the hospital instead of the jail. **Exhibit D, Saltzberg p. 11, 24, & 30; Exhibit L, Saltzberg Report.**

According to Dr. Saltzberg the point of no return for Ms. Musgrove was when she suffered cardiac collapse sometime after 10:25 p.m. Had the deputies gone from the parking lot to the hospital, there would have been plenty of time to save Ms. Musgrove. Additionally, had the officers not gone to the parking lot and met the grandparents at all, the likelihood of Ms. Musgrove's survival would have been even higher.  **Exhibit D, Saltzberg p. 16.**

The Defendants rely entirely upon a pharmacologist who has never treated a patient with any type of overdoses issue, Dr. Cleary. Dr. Cleary cites nothing but statistics in his report, never offering any studies or test to support his opinion that the level of narcotics in Ms. Musgrove's blood was certain to be fatal regardless of treatment.

### Scott County's Liability Under 42 USC 1983

In this case, the officers recognized that Ms. Musgrove was drugged by a third party and unable to make thought out decisions. **Exhibit C, Holland p. 13.** The paramedics and the officers knew that Ms. Musgrove needed to go to the hospital because the ambulance could not treat Ms. Musgrove. **Exhibit H, Street p. 43-44.** Despite the need for medical attention beyond that of an ambulance, Ms. Musgrove was taken to jail and died just hours later.

Not knowing what to do from the County's viewpoint, Deputy Holland took Ms. Musgrove to jail instead of the hospital. Going to the jail ultimately ended in Ms. Musgrove's death. In this case, Ms. Musgrove called the deputies complaining that she had been drugged against her will, did not feel well, and did not want to die.

The County has no guidance whatsoever for an officer where an incoherent and distressed detainee does not want to go to the hospital, but paramedics believe the individual

needs a hospital. Sheriff Lee testified that his officers have the authority to take someone to the hospital, whether the person wants to go or not, but its just now the County's practice to transport them to the hospital. **Exhibit G, Lee p. 15.**

In addition, the deputies had no training whatsoever regarding the recognition of different symptoms from different types of substances.

### E.  <u>CONCLUSION</u>

The Defendants want the Court to just as they did, ignore the fact that Ms. Musgrove sought out help because she had been drugged by a third party and Ms. Musgrove did not feel well. The paramedics confirmed that Ms. Musgrove needed a hospital, yet the officers chose to take Ms. Musgrove to the jail where eventually dies from lack of meaningful help. A.A. and S.R. are orphans now because the officers ignored Ms. Musgrove's pleas for help and the paramedics opinion that Ms. Musgrove needed a hospital. The Defendants' motions must be denied.

**PLAINTIFFS**

_/s/ Daniel M. Waide_
Daniel M. Waide, Esq.

<u>**CERTIFICATE OF SERVICE**</u>

I, Daniel M. Waide, do hereby certify that I electronically filed the foregoing with the Clerk of court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted this the 1st day of June, 2021.


_____/s/ *Daniel M. Waide*_____
Daniel M. Waide, Esq.

Daniel M. Waide, (MSB#103543)
Johnson, Ratliff & Waide, PLLC
1300 HARDY ST.
PO BOX 17738
HATTIESBURG, MS 39404
601-582-4553 (OFFICE)
601-582-4556 (FAX)
dwaide@jhrlaw.net