# S.R., et al. v. Scott County, et al.

## Zack Holland

### December 21, 2020

All depositions & exhibits are available for downloading at
<www.brookscourtreporting.com>
Please call or e-mail depo@brookscourtreporting.com if you need  a
**Username** and **Password.**



**Mississippi - Louisiana - Tennessee - New York**
**1-800-245-3376**

EXHIBIT C

Zack Holland 12/21/2020

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


S.R. A MINOR CHILD AND
THROUGH HIS GUARDIAN
KELLEY MUSGROVE AND AS
WRONGFUL DEATH
BENEFICIARIES AND AS
SURVIVORS OF MIRANDA
MUSGROVE; AND A.A. A
MINOR CHILD AND THROUGH
HIS GUARDIAN JUDY EVANS
AND AS WRONGFUL DEATH
BENEFICIARIES AND AS
SURVIVORS OF MIRANDA
MUSGROVE

                                            PLAINTIFFS


V.              CIVIL ACTION NO. 3:19-CV-7370CWR-FKB


SCOTT COUNTY,
MISSISSIPPI; ZAC HOLLAND;
CODY MAY; PATIENT CARE
LOGISTICS SOLUTIONS
MISSISSIPPI, LLC, DBA
LIFE CARE EMS; AND JOHN
DOES 1-5

                                            DEFENDANTS


DEPOSITION OF ZACK HOLLAND


Taken at the instance of the Plaintiffs at the Scott
  County Sheriff's Department, 530 Airport Road,
 Forest, Mississippi, on Monday, December 21, 2020,
            beginning at 10:56 a.m.



REPORTED BY:
SHANNA CUMBERLAND, CCR #1774

Zack Holland 12/21/2020

```
 1     APPEARANCES:

 2

       DANIEL M. WAIDE, ESQ.
 3     Johnson, Ratliff & Waide, PLLC
       1300 Hardy Street
 4     Hattiesburg, Mississippi  39401
       dwaide@jrhlaw.net

 5

 6          COUNSEL FOR PLAINTIFFS

 7

 8     CHRISTINA J. SMITH, ESQ.
       Allen, Allen, Breeland & Allen
 9     214 Justice Street
       Brookhaven, Mississippi  39601
10     csmith@aabalegal.com

11

            COUNSEL FOR DEFENDANT,
12            SCOTT COUNTY, MISSISSIPPI

13

14     MARY MCKAY GRIFFITH, ESQ.
       Jacks, Griffith, Luciano
15     150 North Sharpe Avenue
       Cleveland, Mississippi  38732
16     mgriffith@jlpalaw.com

17

            COUNSEL FOR DEFENDANTS, ZACK HOLLAND AND
18            COTY MAY

19

20

21

     ALSO PRESENT:  Coty May
22

23

24

25
```

EXHIBIT C

Zack Holland 12/21/2020

```
 1     to deteriorate during the encounter?
 2          A.   Yes, sir.
 3          Q.   Okay.  And do you recall roughly how long
 4     your encounter lasted on -- what was the name of the
 5     road y'all were on?
 6          A.   Morton-Rankin County Line Road.
 7          Q.   All right.  Roughly, how long were you
 8     there at Morton-Rankin County Line Road?
 9          A.   I don't recall exactly.  It was a little
10     time, but I don't remember the exact amount of time.
11     I would have to check the record.  I don't want to
12     speculate.
13          Q.   Okay.  And now, when you were -- as far
14     as -- I'm going to start with Scott County.  As I
15     understand it, there's been no training for -- to
16     recognize or assess whether or not someone has
17     overdosed on meth.
18               Do you know differently?
19          A.   No, sir.
20          Q.   Okay.  Now, when you went back in 2011
21     with MLEOTA training, did you have any training
22     there to deal with overdoses?
23          A.   No, sir.
24          Q.   Okay.  And do you have any training to
25     recognize the signs of a drug overdose?
```

EXHIBIT C

Zack Holland 12/21/2020

```
 1    those situations?
 2         A.   I believe the situation we -- in that
 3    situation, we did the exact same thing we did here.
 4    We called for EMS to come on scene, and the person
 5    that was suspected of overdosing or being heavily
 6    under the influence of it, they were transported on
 7    the ambulance.
 8         Q.   Okay.  So that person needed medical
 9    attention and got medical attention?
10         A.   Yes, sir.
11         Q.   Okay.  And in this situation, Ms. Musgrove
12    was uncooperative, right?
13         A.   Yes, sir.
14         Q.   All right.  And she was -- you've already
15    said she was incoherent?
16         A.   Yes, sir.
17         Q.   Do you agree that she was incapable of
18    making well, thought-out decisions at that point?
19              MS. SMITH:  Object to the form.
20              MS. GRIFFITH:  Object to the form.
21              THE WITNESS:  I would agree, yes, sir.
22         Q.   (By Mr. Waide)  Okay.  And as a deputy,
23    you have -- if -- once Ms. Musgrove was in custody,
24    you have the choice, you could have taken her to the
25    hospital or to jail, right?
```

Zack Holland 12/21/2020

```
 1          Q.   And she -- you'd already ruled her 10-15,
 2     correct?
 3          A.   I don't remember exactly when that was.
 4          Q.   But you said it in the video, 10-15?
 5          A.   Yes, sir, but this was several years ago.
 6     I don't remember exactly at what point I said it.
 7          Q.   Okay.  But at that time, 10-15 means she's
 8     in custody, right?
 9          A.   Yes, sir.
10          Q.   Okay.  And if that point was before EMS
11     arrived, then she was in custody before EMS arrived,
12     correct?
13          A.   I don't believe she was in custody before
14     EMS arrived?
15               MS. GRIFFITH:  Object to the form.
16               THE WITNESS:  I would have to go back and
17     review it, but I don't -- I believe it was after EMS
18     arrived that she was placed in our custody.
19          Q.   (By Mr. Waide)  Okay.  But she was in
20     handcuffs at that time?
21          A.   I don't recall.
22          Q.   Okay.  Well, she was placed in handcuffs
23     after she said something to the effect of law
24     enforcement trying to screw her over or something
25     like that?
```

Zack Holland 12/21/2020

```
 1              MS. GRIFFITH:  Object to the form.
 2              THE WITNESS:  I don't recall.
 3         Q.   (By Mr. Waide)  Okay.  And since we don't
 4    have any video or audio of Ms. Musgrove in the back
 5    seat of the car, so can you give me what you
 6    remember from the time you left Morton-Rankin County
 7    Road, to the time that you meet with Ms. Evans and
 8    the mother.
 9         A.   We went to the original residence where
10    all this stuff originally supposedly took place.  We
11    got the car seat for the child.  We went to the
12    intersection of Morton-Rankin County Line Road and
13    Highway 80, a little store right there where were
14    parked.
15              The child was in the front seat with me.
16    I did my best to keep her calm.  I let her watch
17    little cartoon videos on my phone and the stuff like
18    that.
19              Ms. Musgrove was in the back seat kicking,
20    hollering, screaming.  She seemed to be visibly
21    upset because the child wasn't upset.  I advised her
22    several times to calm down, you know, your baby is
23    good and everything.
24              She kept telling the child, "Baby, tell
25    them what's wrong.  Baby, tell them what's wrong."
```