UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

S.R., a minor child by and through his guardian KELLEY MUSGROVE and as Wrongful Death Beneficiary and survivor of MIRANDA MUSGROVE; and A.A., a minor child by and through her guardian JUDY EVANS and as Wrongful Death Beneficiary and survivor of MIRANDA MUSGROVE                                                                          PLAINTIFFS

V.                                               CIVIL ACTION NO. 3:19-CV-737-KHJ-FKB

SCOTT COUNTY MISSISSIPPI;
ZAC HOLLAND; CODY MAY; and JOHN
DOES 1-5.                                                                                           DEFENDANTS

ORDER

This matter is before the Court on Defendants Zac Holland and Cody May's Motion for Summary Judgment [89] and Defendant Scott County, Mississippi's ("Scott County") Motion for Summary Judgment [93]. For the reasons below, the Court grants Defendants' motions.

I. Facts and Procedural History

This case arises from Miranda Musgrove's death while in the custody of Scott County Police Officers Zac Holland and Cody May ("Officers"). On July 10, 2018, at 7:23 p.m., a man contacted 911 and reported a disturbance near Morton-Rankin County Line Road; Miranda Musgrove had asked him to call the police because someone was trying to hurt her baby. CAD Report [105-1]; Holland Report [93-3] at 3.

Deputy Holland responded to the call around 7:38 p.m., [93-3] at 3. He saw Miranda Musgrove fighting with Sheila Matthews. Holland Body Camera Footage, Video 1 [93-4], 0:09. Holland separated the women and questioned Musgrove. *Id.*, 0:26. As Musgrove recounted the events to Holland, her movements became erratic. And her speech fluctuated in rhythm and topic. *Id.*, 0:26–57. This behavior continued throughout the encounter. *See generally id.* Musgrove stated at one point, "I need help," and, "[h]e gave me something." *Id.*, 0:57, 1:03.

Musgrove asked Holland to take her four-year-old daughter A.A. home and then again began to move erratically. *Id.*, 2:52; 8:11. Holland asked, "Hey, you need medical attention? You need some medical attention." *Id.*, 3:11. Musgrove answered, "No, no, I need to get away from here." *Id.*, 3:14. Holland then asked if he could hold A.A. while the parties talked, because A.A. "look[ed] upset" and Musgrove was jerking. *Id.*, 3:27–43. After handing A.A. to Holland, Holland called an ambulance for "a female subject out here under the influence of something." *Id.*, 4:32. After calling a second time for an ambulance, Musgrove yelled, "I don't need an ambulance!" *Id.*, 4:58.

Musgrove kept saying that she drank something that made her "feel this way" and recounted how she got in a fight with a man named Charlie for having a "pipe" around A.A. *Id.*, 6:10–50. She insisted she was fine and "just want[ed] out of here." *Id.*, 6:56. Holland asked Musgrove if she had smoked meth, and she responded, "I swear to God, I have not smoked anything." *Id.*, 7:55. Musgrove then informed Holland that she did not want to drive because she did not feel well and

2

explained that she was acting the way she was because she had not taken her anxiety pills. *Id.*, 8:30–9:12.

Holland audibly observed that Musgrove was sweating, jerking, and "foaming at the mouth." *Id.*, 12:50–13:08. He asked Musgrove if she thought Charlie put meth in her drink. *Id.*, 13:29. The encounter largely continued like this—Musgrove talking about Charlie, at times asking for help in serious tones, moving suddenly and unpredictably, and making threats. *See id.*, 14:00–21:17. Again Holland called for a medic. *Id.*, 19:23. Eventually, Deputy Cody May arrived at the scene. *Id.*, 21:35. May also saw Musgrove jerking her arms. *Id.*, 24:03.

The paramedics soon arrived. *Id.*, 25:12. In the Officers' presence, the paramedics asked Musgrove about her anxiety and instructed her to take deep breaths because it seemed like she was hyperventilating. *Id.*, 25:55. They also asked if she had any drugs or alcohol, to which she responded, "no." May Body Camera Footage, Video 2 [93-7], 2:21. She later denied drug or alcohol use again. *Id.*, 4:38. Musgrove declined a request to go to the hospital. *Id.*, 2:29. One paramedic accused Musgrove of taking "some kind of substance" because she was "foaming at the mouth and freaking out." *Id.*, 4:20. Musgrove responded that she had been "set up" and became accusatory. *Id.*, 4:43. Holland explained that he was trying to help Musgrove and not arrest her. *Id.*, 5:01.

The Officers repeatedly asked Musgrove to provide contact information of A.A.'s grandmother, but she refused. *Id.*, 5:26–7:58. The Officers informed Musgrove that they planned to take her to the hospital, and that A.A. would not be leaving

3

with her. Musgrove responded that she "cannot get screwed over by the law anymore." *Id.*, 5:43–6:25. The Officers then arrested Musgrove. *Id.*, 6:25. While in handcuffs, May and a paramedic confronted Musgrove about her foaming at the mouth and not answering the paramedic's questions. *Id.*, 11:09. Musgrove started yelling at the paramedic, who told her that he could not "see what's going on with [Musgrove]" without taking her to the hospital. *Id.*, 12:34. Finally, May threatened to send A.A. to Department of Human Services if Musgrove did not provide contact information for someone to pick up A.A. *Id.*, 13:00. Musgrove did not give a clear answer, accused the Officers of "taking the meth-head's side," and brought the conversation back to Charlie. *Id.*, 14:13.

May placed Musgrove in the police car with Matthews. *Id.*, 19:35. Musgrove began to scream and yell expletives at Matthews, so Holland removed Matthews from the vehicle. *Id.*, 19:54. Musgrove continued to yell at the Officers, and May threatened to tase her if she did not back away while he retrieved Matthews' items. *Id.*, 20:10. Musgrove calmed down and gave the Officers a phone number for Judy Evans, Musgrove's grandmother, before becoming volatile once again. *Id.*, 20:58. Musgrove shouted her version of the events again at May, stating at one point, "please don't let me die like [A.A.'s dad] did." *Id.*, 22:14.

May contacted Judy Evans, Musgrove's grandmother, around 8:15 p.m. to exchange custody of A.A. [93-10] at 13. While the Officers went to Matthews' residence to get A.A.'s booster seat, Musgrove remained handcuffed in the back of the car screaming and kicking. Depo. of Holland [89-4] at 7. Holland then

4

transported A.A. and Musgrove together to meet Evans. [93-9]. It took over forty-five minutes before the parties met. [93-10] at 13; Holland Report [93-3] at 4 (Evans's arrival at 9:54 p.m.). Upon arrival, Musgrove calmed down, muttered to herself, and lied down in the back seat while the Officers met with Evans and Kelley Musgrove Danos—Musgrove's mother. *See* [93-10] at 14–15; [89-4] at 7–8; [93-9]. While Evans retrieved A.A., Danos asked to speak to her daughter, and May permitted her to approach the vehicle. Depo. of Danos [93-11] at 14. Danos saw Musgrove lying down and tried speaking to her but received no response. *Id.* May informed Danos that the paramedics had checked Musgrove and that they intended to have a nurse assess her at the police station. *Id.* at 14–16. Danos did not try to speak to Musgrove further because Danos did not want to bother her. [93-10] at 14–15. May stated he believed Musgrove was asleep. [93-9].

    The Officers then transported Musgrove to the Scott County Detention Center. [93-3] at 4. They were in different vehicles, but both testified that Musgrove sat back up sometime during the ride before lying back down. *See id.* at 8 (May saw Musgrove's silhouette in oncoming headlights); [89-4] at 8–9. Holland claims she unintelligibly talked during part of the ride. [89-4] at 9. When they arrived at 10:13 p.m., the Officers discovered Musgrove was lying down, breathing, but unresponsive. [93-3] at 4. They removed her from the car and observed she was foaming at the mouth. *Id.* The Officers and female jail staff took off her handcuffs and sat her up in a chair. *Id.*; [93-4] (Video 2). May called an ambulance which

arrived at 10:27 p.m. [93-3] at 4. Both Officers escorted the ambulance to the hospital. *Id.*

Musgrove ultimately passed away from cardiac arrest while at the hospital after attempted CPR. Depo. of Walker [93-14] at 5–9. An autopsy report stated the cause of death was "mixed drug toxicity." Autopsy Report [93-15] at 3. Plaintiffs, the beneficiaries and survivors of Musgrove, filed this wrongful death action, alleging violations of Musgrove's Fourth, Eighth, and Fourteenth Amendment rights under 42 U.S.C. § 1983, and state law allegations of negligence, gross negligence, infliction of emotional distress, negligence per se, and loss of society and companionship. Second Am. Compl. [28] ¶¶ 48, 65–93. Defendants now move for summary judgment. [89], [93].

II.     Standard

When considering a motion under Federal Rule of Civil Procedure 56, the Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the applicable substantive law, 'its resolution could affect the outcome of the action.'" *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)). "An issue is 'genuine' if 'the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the burden at trial rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record." *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)). Once the movant meets this requirement, "the burden shifts to the nonmovant to produce evidence of the existence of such an issue for trial." *Id.* (quoting *Miss. River Basin All. v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013). The Court should grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 560 (5th Cir. 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

III.   Analysis

Plaintiffs assert both § 1983 and state law tort claims against Holland, May, and Scott County. The Officers move for summary judgment arguing that no constitutional violation occurred and that they are entitled to qualified immunity. Memo in Supp. of Mot. Summ. J. by Holland and May [90] at 7–19. Scott County also moves for summary judgment, joined by the Officers, asserting that Plaintiffs fail to show a constitutional violation and that the Mississippi Tort Claims Act bars the state law claims. Memo in Supp. of Mot. Summ. J. by Scott County [94] at 10–28.

A. Due Process Claim against Officers

Plaintiffs assert that the Officers' actions violated Musgrove's rights under the Fourteenth Amendment by acting with deliberate indifference to her medical needs.[1] [28] ¶¶ 65–88. In response, the Officers assert qualified immunity. [90] at 10.

The Due Process Clause of the Fourteenth Amendment provides pretrial detainees with a right to not have their serious medical needs met with deliberate indifference by confining officials. *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001). Deliberate indifference is not mere "negligence in diagnosing or treating a medical condition." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (citations omitted). To be deliberately indifferent, a confining official must "know[] of and disregard[] an excessive risk to [the confined person's] health or safety." *Id.* at 837. Plaintiffs must show "that (1) the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) the official actually drew that inference." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 755 (5th Cir. 2001)). Plaintiffs must also show that officials refused or delayed treatment, ignored complaints, intentionally treated incorrectly, or engaged in similar conduct clearly

---

[1] Plaintiffs claim violations of Musgrove's Fourth and Eighth Amendment rights in passing. [28] ¶¶ 66–67. Because Eighth Amendment scrutiny does not apply to detainees before a formal adjudication of guilt, such scrutiny does not apply. *Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Similarly, the Second Amended Complaint does not set forth any allegation resembling an unreasonable search or seizure under the Fourth Amendment or citing Fourth Amendment law. As a result, the Court will only consider Fourteenth Amendment Due Process claims under § 1983.

evidencing a wanton disregard for serious medical needs. *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018) (citations omitted).

As non-movants with the burden of proof, Plaintiffs must produce evidence sufficient to establish a genuine issue of fact on an element of their claim. Plaintiffs insist a genuine dispute exists as to whether the Officers were deliberately indifferent, first citing the body camera footage. They argue the Officers' response to Musgrove's claims of being drugged and pleas for help to not let her die paired with the paramedics' confirmation that she needed a hospital establish deliberate indifference. Resp. [105] at 16. Plaintiffs also contest Musgrove's condition when the Officers gave A.A. to Evans, arguing both that Musgrove sleeping "was a marked change from [her] prior state and should have alerted the Officers to an increased need for a hospital," *id.* at 17, and that there is dispute about whether Musgrove sat up on the way to the jail, *id.* at 7–8.

The Court finds that Plaintiffs cite no evidence generating a genuine dispute of fact. First, Plaintiffs' reliance on the body camera footage does not support an inference that Holland or May were aware of facts showing a substantial risk that serious harm existed. In context, Musgrove's sporadic requests for help would not suggest to a reasonable observer that she was at risk of overdose. Rather, her requests suggest that Musgrove needed the Officers' help to remove her and her daughter from the situation or help to confront Charlie. *See, e.g.*, [93-4], 17:55.

Plaintiffs provide no expert opinion or other evidence to explain how, from the recorded interaction, that it was obvious or that the Officers should have known

9

Musgrove was at a substantial risk of an overdose. *See Farmer*, 511 U.S. at 843 n.8. She repeatedly said that she had not ingested drugs or alcohol and did not need to go to the hospital. And both the Officers and the paramedics encouraged Musgrove to go to the hospital for an evaluation, but she refused. *See, e.g.*, [93-7], 2:21, 11:09, 12:34. The paramedics voluntarily released Musgrove into police custody, noting her refusal for further examination. Ambulance Record [101] at 2. The paramedics did not note any need for immediate treatment. *Id.*; *see also generally* [93-7]; [93-4].

Plaintiffs also claim a genuine dispute about Musgrove's condition when meeting Evans and Danos. They point to Danos's deposition testimony stating that Musgrove appeared asleep in the back of the car. [105] at 17. This, however, does not contradict the Defendants' assertion that Musgrove was sleeping. [93] ¶ 24. Plaintiffs also point to Evans's deposition where Evans states A.A. said, "[T]hey had handcuffs on my mama, and then she just fell back dead." [93-10] at 14. This single hearsay statement is not enough to create a genuine dispute of fact. *See Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995) ("Evidence on summary judgment may be considered to the extent not based on hearsay or other information excludable at trial." (citation omitted)); Fed. R. Civ. P. 56(c)(2). Plaintiffs also dispute whether Musgrove did, in fact, sit up on the ride back to Scott County jail, stating that she may have been unconscious. [105] at 7–8. Yet Plaintiffs do not provide or cite any evidence in the record contradicting Holland and May's testimonies.

Finally, Plaintiffs contend, "sleeping was a marked change from Ms. Musgrove's prior state and should have alerted the officers to an increased need for

a hospital." *Id.* at 17. No evidence suggests Musgrove slept or was otherwise unresponsive for the entire ride back to the jail. May claims to have seen Musgrove sitting up, [93-3] at 8, and Holland claims she sat up and mumbled, [89-4] at 9. Even assuming Musgrove did not sit up on the way back to the hospital and remained asleep for the ride, Plaintiffs do not provide evidence that this is a "fact[] from which the inference could be drawn that a substantial risk of [overdose] exists." *Dyer*, 964 F.3d at 380; *see also Sanchez v. Young Cnty.*, 866 F.3d 274, 279 (5th Cir. 2017) ("While the Court must draw all justifiable inferences in favor of the nonmovant, the nonmovant must provide sufficient evidence to enable such inference." (citation omitted)).

Still, Plaintiffs offer no evidence suggesting that the Officers inferred Musgrove's sleeping was symptomatic of an overdose. Absent other information, a substantial risk of overdose is not obvious from Musgrove sleeping in the back of the car for possibly 30 minutes in the late evening. While the Court does not weigh evidence or make credibility determinations, the Officers supply ample evidence left unrebutted. *See, e.g.*, [89-4] at 6 (Holland untrained on identifying overdoses), 7 (Musgrove's condition and A.A.'s safety were Officer's primary concern); [93-8] at 4 (May untrained in identifying overdoses), 6 (Musgrove did not appear to need hospital care); [101] at 2 (paramedic notes no nuero deficits, Musgrove did not complain about issues, Musgrove was ambulatory on scene, and Musgrove refused care).

Conclusory allegations that the Officers knew or should have known Musgrove needed care sooner cannot defeat summary judgment. *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (citation omitted). Evidence that the Officers had reason to know about the impending overdose is necessary. *See, e.g., O'Neal v. City of San Antonio*, 344 F. App'x 885, 887–90 (5th Cir. 2009) (summary judgment affirmed where officers witnessed decedent consume crack cocaine and did not take decedent to hospital because officers were unaware of excessive risk of overdose). For these reasons, the undisputed facts do not support a prima facie claim of deliberate indifference. While the situation is tragic, the Officers did not deprive Musgrove of her constitutional rights. The Officers are entitled to judgment as a matter of law.

    B.  *Monell* Claim against Scott County

Plaintiffs also assert Scott County deprived Musgrove of her constitutional right to medical care under the Due Process Clause by failing to train its officers to identify the signs of meth overdose. *Monell* liability only attaches to a municipality's inadequate training if (1) the training policy procedures are inadequate, (2) the municipality was deliberately indifferent[2] in adopting its policy, and (3) the inadequate training policy directly caused the constitutional violation. *Kitchen v. Dallas Cnty.*, 759 F.3d 468, 484 (5th Cir. 2014) (citations omitted). Deliberate indifference—for purposes of *Monell* liability—requires a plaintiff to show either

---

[2] This deliberate indifference standard is separate and distinct from the standard applied in due process denial of medical care cases discussed above. *See Duvall v. Dallas Cnty. Tex.*, 631 F.3d 203, 210 (5th Cir. 2011).

notice of a pattern of similar violations or the single incident accompanied by "proof of the possibility of recurring situations [presenting] an obvious potential for [constitutional violations]." *Burge v. St. Tammany Par.*, 336 F.3d 363, 372–73 (5th Cir. 2001) (citations and internal quotation omitted).

Plaintiffs' claim fails to show both an underlying constitutional violation and deliberate indifference on behalf of Scott County. As the Court holds above, the Officers did not violate Musgrove's due process rights. Because the Officers did not violate Musgrove's right to medical care, Scott County cannot be liable for failure to train. *See Graham v. Hodge*, 619 F. App'x 394, 395–96 (5th Cir. 2015) (failure to train claim fails without an underlying constitutional violation). Equally, Plaintiffs do not plead a pattern of similar violations or provide any proof of constitutional violations being a "highly probable consequence" of Scott County's failure to train. *Burge*, 336 F.3d at 373. The Court therefore grants Scott County summary judgment on this claim.

### C. State Tort Claims

Plaintiffs assert claims of negligence, gross negligence, infliction of emotional distress, and negligence per se against Defendants.[3] [28] ¶ 48. Plaintiffs argue that Scott County and the Officers had an affirmative duty to provide necessary medical care and recklessly disregarded that duty. *Id.* ¶¶ 30–31 Defendants argue that the Mississippi Tort Claims Act ("MTCA") precludes these tort claims against both the Officers and the County. [94] at 22. Plaintiffs do not respond to Defendants'

---

[3] Because loss of society and companionship is a type of damage and not an independent cause of action, the Court does not analyze it here. *See* Miss. Code Ann. § 11-1-60(1)(a).

13

arguments. As a result, to the extent that Plaintiffs do not address factual assertions in the motions, the Court considers those facts undisputed. *See* Fed. R. Civ. P. 56(e).

The MTCA provides that government entities and employees shall not be liable for certain claims including those based on "the performance or execution of duties or activities relating to police or fire protection" or from a plaintiff "who at the time the claim arises is an inmate of any detention center." Miss. Code Ann. § 11-46-9 (c), (m). But police-protection immunity does not apply if the employee acted in "reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." § 11-46-9 (c).

Defendants argue police-protection immunity applies because the Officers did not act with reckless disregard, and Musgrove was engaged in criminal activity. It is undisputed that the Officers operated within the scope of their employment when they detained Musgrove for disorderly conduct. [94] at 23; *see also* Miss. Code Ann. §97-35-7 (misdemeanor offense to refuse to promptly comply with lawful order of law enforcement). It is also undisputed that Musgrove did not comply with lawful orders of the Officers. Because disorderly conduct under § 97-35-7 is criminal activity, the exception to police-protection immunity does not apply. This is enough to trigger police-protection immunity under the MTCA.

Likewise, Mississippi courts interpret "inmate" under the MTCA broadly to include pretrial detainees and those in the process of being booked. *See Hinds Cnty. v. Burton*, 187 So. 3d 1016, 1024 (Miss. 2016). Plaintiffs provide no evidence or

argument showing that the police protection and inmate tort immunities do not apply. Assuming Plaintiffs present a prima facie case for negligence, such claims are barred by either the police-protection exception or inmate exception to the MTCA. The Court awards summary judgment to Defendants.

IV. Conclusion

The Court has considered all the arguments set forth by the parties. Those arguments not addressed would not have changed the outcome of the Court's decision. For the reasons above, the Court GRANTS Defendants Officers' Motion for Summary Judgment [89] and Defendant Scott County's Motion for Summary Judgment [93]. The Court will enter a separate, final judgment with this Order.

SO ORDERED AND ADJUDGED this the 4th day of February, 2022.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE